UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRUCE DEMAR PFEIFER, JR.,

    Plaintiff,

    v.                                                                      CAUSE NO. 3:23-CV-536-JD-SJF

ARMARK FOOD CORP, et al.,

    Defendants.

OPINION AND ORDER

Bruce Demar Pfeifer, Jr., a prisoner without a lawyer, filed an amended complaint against fifteen separate defendants for allegedly failing to provide him with a kosher diet while he was incarcerated at the St. Joseph County Jail. ECF 13. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Pfeifer alleges that, when he was booked into the St. Joseph County Jail on February 11, 2023, he notified booking staff that he is a Hebrew Israelite and eats a kosher diet. Someone in the booking department gave him a form and told him to send his request for a kosher diet to Warden Russ Olmstead and Sheriff W. Redman. He

followed those instructions, but he did not receive a response. On February 28, 2023, he made another request for a kosher diet. This request was directed to inmate services. An officer responded on March 1, 2023, indicating that his request was approved, and Pfeifer began receiving kosher meals on February 28, 2023.

Pfeifer, however, was not satisfied that the diet he was receiving was in fact kosher. On March 4, 2023, he submitted a request to Aramark Supervisor Michael Shapiro. In this request, Pfeifer complained that the meals were being served against religious procedure because they were received on the county jail's hard trays and with reusable utensils. Pfeifer wanted Styrofoam trays and disposable utensils. Shapiro approved his request to have his food served on Styrofoam trays, but he did not address Pfeifer's request for disposable utensils. Pfeifer filed a grievance against Armark, but he did not receive a response.

On March 22, 2023, Pfeifer complained that Shapiro allowed deputies and inmate trustees to deliver meals instead of approved kosher handlers (certified by a rabbi or someone of the same faith). Pfeifer asserts that, without an approved kosher handler, the meals are no longer kosher. He received no response.

On April 22, 2023, Clp. Baker and Deputy Wilson allegedly denied Pfeifer a kosher meal. Pfeifer filed another complaint against Russ Olmstead and Rebecca Zawistowski regarding how his meals were prepared and served. He received no response.

On May 3, 2023, Pfeifer's meal was served on a reusable tray. Deputy Benson said Pfeifer must either accept the meal or get nothing for lunch. Another deputy

2

contacted Warden Olmstead with Pfeifer's request that meals be served on disposable trays, and Warden Olmstead denied Pfeifer's request. That evening, Pfeifer again refused a meal because it was on a reusable tray. Deputy Valez[1] contacted Aramark employee Sandy, who indicated that they stopped using Styrofoam trays at the direction of Rebecca Zawistowski. Pfeifer filed a grievance directed to Zawistowski and Shapiro, but neither responded.

On July 7, 2023, Deputy Worth refused to replace a contaminated meal tray. Pfeifer further alleges that, on July 8, 2023, Deputy Grahl, Deputy Sharp, Sgt. Garcia, and Lt. Brothers attempted to serve him contaminated food and refused to replace that food. On July 29, 2023, Deputy Grahl used his boot to sweep up a reusable spoon like those provided with Pfeifer's kosher meals.

In short, Pfeifer alleges that the allegedly kosher meals he received at the jail were not in fact kosher because they were delivered on reusable trays, utilized reusable utensils, and were delivered by individuals who lacked the training necessary to ensure the meal remained kosher. This caused him to either violate his sincerely held religious beliefs or go without adequate nutrition.[2]

---

[1] Deputy Valez is not listed as a defendant in the amended complaint.

[2] Pfeifer also references an occasion when he received spoiled milk, resulting in diarrhea and inadequate calories for that meal. Exhibits submitted with the amended complaint indicate that the issue was addressed with the vendor that provided the milk. ECF 13-1 at 14. Being deprived of milk at a single meal does not implicate constitutional concerns. "Not every wrong committed under color of law, however, is offered redress by the Constitution[.]" *Leslie v. Doyle*, 125 F.3d 1132, 1138 (7th Cir. 1998). "There is, of course a de minimis level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977).

Prisoners have a right to exercise their religion under the Free Exercise Clause of the First Amendment. *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). Nevertheless, correctional officials may restrict the exercise of religion if the restrictions are reasonably related to legitimate penological objectives, which include safety, security, and economic concerns. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). Moreover, the Supreme Court of the United States has long established "the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

The Religious Land Use and Institutionalized Persons Act (RLUIPA) affords even broader protections than the First Amendment. This act prohibits governmental entities from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *see generally Holt v. Hobbs*, 574 U.S. 352 (2015). RLUIPA does not permit a suit against an individual for money damages. *See Nelson v. Miller*, 570 F.3d 868, 886-87 (7th Cir. 2009), *abrogated on other grounds by Jones v. Carter*, 915 F.3d 1147, 1149-50 (7th Cir. 2019). However, it is an open question whether monetary damages are available under RLUIPA against counties or county officers acting in their official capacity. *See Williams v. Redman*, No. 3:20-CV-196-JD-MGG, 2021 WL 1907224, at *3

4

(N.D. Ind. May 12, 2021) (citing *Tanzin v. Tanvir*, 141 S. Ct. 486, 492 (2020), and allowing a RLUIPA damages claim to proceed at screening against county sheriff).

Here, Pfeifer has pled facts from which it can be plausibly inferred that the manner in which his food was prepared and delivered rendered it not kosher and violated his rights under both the First Amendment and RLUIPA.[3] He may proceed against Michael Shapiro, Russ Olmstead, and Rebecca Zawistowski in their individual capacities for monetary damages under the First Amendment because he has alleged that they were each personally involved in making decisions regarding how his meals would be prepared and served. Additionally, he may proceed against Warden Russ Olmstead[4] in his official capacity under both the First Amendment and RLUIPA.[5]

However, Pfeifer may not proceed against Armark Employee Sandy, as he alleged only that she explained that they were no longer using Styrofoam at the

---

[3] Pfeifer has not clearly annunciated the nature of the problem with reusable trays and utensils in his amended complaint. However, his objection to the use of the same trays and utensils used by other inmates is consistent with kosher laws. "Unless one is a vegetarian and totally excludes meat from their kitchen, a kosher kitchen must have two different sets of utensils, one for meat and poultry and the other for dairy foods. There must be separate, distinct sets of pots, pans, plates and silverware." https://www.kosher.com/jewish-learning/keeping-a-kosher-kitchen/ (last visited Feb. 18, 2024).

[4] It is unnecessary to allow claims to proceed against both Warden Olmstead and Rebecca Zawistowski in their official capacity, as a suit against either of them in their official capacity is the same as a suit against St. Joseph County itself. *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1071 (7th Cir. 2012).

[5] Pfeifer's potential damages under both the First Amendment and RLUIPA are limited by the Prison Litigation Reform Act of 1996 ("PLRA"). The PLRA states that "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). Pfeifer does not allege any physical or other concrete injury as a result of the alleged infringement of his religious practices, so his recovery may be limited to nominal and punitive damages (if he can make the required showing) against the defendants on his individual capacity claims, and nominal damages on his official capacity claim. *See Bryan*, 523 F.3d at 804 (noting that PLRA provision limiting damages applies to RLUIPA claims); *Pearson v. Welborn*, 471 F.3d 732, 744-45 (7th Cir. 2006) (allowing only nominal damages award to inmate who prevailed at trial on a First Amendment retaliation claim because he did not suffer physical or other injury as required by the PLRA for compensatory damages).

direction of Zawistowski and Olmstead. She is not the cause of Pfeifer's injury. Likewise, Pfeifer may not proceed against Deputy Benson because he did not decide that meals would be served on reusable trays; he merely carried out the directives of his supervisors.

Pfeifer may not proceed against Deputy Wilson, Clp. Baker, Deputy Grahl, Deputy Sharp, Sgt. Garcia, or Lt. Brothers regarding the incidents on April 22, 2023, July 7, 2023, or July 8, 2023, because the allegations in the amended complaint are too vague to state claims. Furthermore, it appears that they also were merely carrying out the directives of their supervisors.

Pfeifer also names Deputy EB as a defendant, but he does not mention Deputy EB in the body of his amended complaint. Similarly, Sheriff Redman's only involvement was as a recipient of Pfeifer's first request for kosher meals. "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Because he has not alleged any misdeeds on the part of Deputy EB or Sheriff Redman, he may not proceed against them.

Additionally, Pfeifer named Armark Food Service, the private company that provides meals at the jail, as a defendant. A private company performing a public function can be held liable if its own policies caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); *Rice v. Correctional Medical Svcs.*, 675 F.3d 650, 675 (7th Cir. 2012). The purpose of the official

6

policy requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). Here, the amended complaint plausibly alleges that Armark had policies related to how they prepared and served kosher food that resulted in violations of Pfeifer's rights under the First Amendment and RLUIPA. Therefore, he may proceed against Armark Food Corp.

For these reasons, the court:

(1) GRANTS Bruce Demar Pfeifer, Jr., leave to proceed against Michael Shapiro, Russ Olmstead, and Rebecca Zawistowski in their individual capacities for monetary damages for depriving him of a diet consistent with his religious believes, in violation of the First Amendment;

(2) GRANTS Bruce Demar Pfeifer, Jr., leave to proceed against Russ Olmstead in his official capacity for monetary damages for depriving him of a diet consistent with his religious believes, in violation of the First Amendment and RLUIPA;

(3) GRANTS Bruce Demar Pfeifer, Jr., leave to proceed against Aramark Food Corp. for monetary damages for depriving him of a diet consistent with his religious believes, in violation of the First Amendment and RLUIPA;

(4) DISMISSES all other claims;

(5) DISMISSES Armark Employee Sandy, Deputy Benson, Sheriff W. Redman, Deputy Wilson, Clp. Baker, Sgt. Garcia, Deputy Beth Sharp, Lt. Brothers, Deputy EB, Deputy Grahl, and Deputy Worth;

(6) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Michael Shapiro and Aramark Food Corp. at Aramark, with a copy of this order and the complaint (ECF 13);

(7) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Russ Olmstead and Rebecca Zawistowski at St. Joseph County Sheriff's Department, with a copy of this order and the complaint (ECF 13);

(8) ORDERS Aramark and St. Joseph County Sheriff to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(9) ORDERS, under 42 U.S.C. § 1997e(g)(2), Michael Shapiro, Warden Russ Olmstead, Rebecca Zawistowski, and Aramark Food Corp. to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on February 18, 2025

/s/JON E. DEGUILIO  
JUDGE  
UNITED STATES DISTRICT COURT